Petition of **PETROL SHIPPING CORPORATION**, as owner of **TANKER ATLANTIS**, Petitioner-Appellee, for an order directing
**The KINGDOM OF GREECE, MINISTRY OF COMMERCE, PURCHASE DIRECTORATE,** Respondent-Appellant, to proceed to arbitration.

**No. 133, Docket 29935.**

United States Court of Appeals Second Circuit.

Argued Nov. 8, 1965.

Decided April 21, 1966.

Eli Ellis, New York City (Robert W. Mullen, and Hill, Betts, Yamaoka, Freehill & Longcope, New York City, on the brief), for petitioner-appellee.

Arthur M. Becker, New York City (Ronnie A. Yoder, Nixon, Mudge, Rose, Guthrie & Alexander, New York City, on the brief), for respondent-appellant.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

Respondent Kingdom appeals from an order of the United States District Court for the Southern District of New York, Wilfred Feinberg, District Judge, directing it to proceed to arbitration. We find no error and affirm the order.

Petrol Shipping, as owner of the tanker *Atlantis,* entered into a written charter party with respondent dated February 12, 1960, in New York City, and agreed thereby to transport grain acquired by respondent from the United States government pursuant to an agreement between the two governments. The United States was acting under the Agricultural Trade Development and Assistance Act of 1954, 7 U.S.C. 1691 et seq. The grain was to be shipped from Houston, Texas, and/or Baton Rouge, Louisiana, to Piraeus, Greece.

The shipment apparently had to be transported at least 50% by U. S. flag vessels, of which *Atlantis* is one. See 46 U.S.C. § 1241(b). The ship sustained bottom damage at the discharge berth in Piraeus, allegedly due to an unsafe berth, but the charterer disclaimed responsibility. The shipowner alleged damages were about $287,000.

The charter party contained the following arbitration clause:

> Should any dispute arise between Owners and the Charterers, the matter in dispute shall be referred to three persons at New York, one to be appointed by each of the parties hereto, and the third by the two so chosen; their decision or that of any two of them, shall be final, and for the purpose of enforcing any award, this agreement may be made a rule of the Court. The Arbitrators shall be commercial men.

By letter of September 29, 1961 the shipowner named its arbitrator, and demanded that the charterer appoint its; a further demand was made on December 15, 1961. Although respondent said that it had advised its Foreign Trade Administration in Washington to proceed, no arbitrator was named.

On January 14, 1963 Petrol brought this petition in the District Court for the Southern District of New York, under § 4 of the United States Arbitration Act, 9 U.S.C. § 4. Service of process was allegedly effected by ordinary mail to respondent's Ministry of Trade, State Purchase Directorate, Washington; to Becker & Greenwald, described as proctors for the Directorate; and to respondent's Ministry of Commerce, Purchase Directorate, New York City.

The charterer appeared specially, and submitted a suggestion of the Greek Ambassador, that as Greece was a friendly sovereign and therefore immune, the court lacked jurisdiction. No advice from the State Department was transmitted to the court. The District Court, Judge Dawson, denied the petition to compel arbitration on February 21, 1963, on the ground of sovereign immunity.

This judgment was affirmed by a panel of this court, 326 F.2d 117 (2 Cir. 1964), with Judge Clark dissenting, and suggesting the matter should be reversed and remanded to ascertain the position of the State Department. On rehearing en banc, 332 F.2d 370 (2 Cir. 1964), per curiam, the United States Department of Justice having submitted an amicus curiae brief, the matter was remanded for further development of facts. The case was assigned to Judge Feinberg.

Before the District Court heard the case on remand, a panel of this court decided Victory Transport, Inc. v. Comisaria General de Abastecimientos y Transportes, 336 F.2d 354 (2 Cir. 1964), cert. den. 381 U.S. 934, 85 S.Ct. 1763, 14 L.Ed.2d 698 (1965), a case substantially similar in its facts to the present case, holding that a branch of the Spanish Ministry of Commerce could be sued without its consent in that suit, and despite its plea of immunity.

On remand in this case, the parties entered into a stipulation in lieu of a hearing, and introduced exhibits, including the Charter Party and certain documents of correspondence with the State Department. These documents were a request by the Greek Ambassador to the State Department for recognition of immunity and a letter from counsel for petitioner to the Legal Advisor of the State Department asking that the Department decline the Ambassador's request, and citing Victory Transport; the reply of the State Department, declining to recognize any sovereign immunity in the case, on the ground that the matter was jure gestionis, and referring the Ambassador to the Tate letter; and a reply of the Legal Advisor to counsel for petitioner, noting that the Department had declined to intervene.

The District Court requested an amicus curiae brief from the United States, but the government declined, in view of the controlling nature of Victory Transport. By opinion of June 4, 1965, the court directed the Kingdom to proceed to arbitration, refusing to recognize any immunity, relying on Victory Transport. 37 F.R.D. 437 (S.D.N.Y.1965). The Kingdom appeals.

 The proper theoretical approach to the issues in this case is indicated by the brief of the United States as amicus curiae in the rehearing en banc. There, at page 17, the brief states,

the immunity of sovereign did not present a "jurisdictional" defect such as improper service might. Under the Supreme Court's analysis [in Ex Parte [Republic of] Peru, 318 U.S. 578 [63 S.Ct. 793, 87 L.Ed. 1014] (1943)], it appears that in an action against a sovereign just as in any other suit, jurisdiction must be acquired either by service of process, or by the defendant's appearance in court, or in rem by seizure and control of property. Only after such jurisdiction is acquired, does the sovereign immunity defense property [sic] come into consideration. Instead of being a "jurisdictional" matter in the same sense as acquiring jurisdiction over a person or property, sovereign immunity presents a ground for relinquishing the jurisdiction previously acquired.

The first issues, then, deal not with immunity, but rather with jurisdiction in personam and the adequacy of service.

## I. *Jurisdiction*

█ In Farr & Co. v. Cia Interconti-
nental de Navegacion, 243 F.2d·342 (2
Cir. 1957), this court held that in a suit
under the Arbitration Act, where the
parties had agreed to arbitrate and that
"this submission may be made a rule of
court by either party," by agreeing to
arbitrate in New York a party "makes
himself as amenable to suit as if he were
physically present in New York." 243
F.2d at 347. *Farr* was followed in Orion
S. & T. Co. v. Eastern States Petro.
Corp. of Panama, 284 F.2d 419 (2 Cir.
1960), where the contract read, "for the
purpose of enforcing awards this agree-
ment shall be made a Rule of of [sic]
Court." Although the suit was to compel
arbitration, not to enforce an award, the
court concluded that as in *Farr* the par-
ties were as if physically present. We
conclude that this states a rule of federal
law, under the Arbitration Act.

Here the contract reads, "for the pur-
pose of enforcing any award, this agree-
ment may be made a rule of the Court."
This is not appreciably different from
the *Orion* contract, and as was said in
*Victory Transport*, "the fine distinction"
between a submission to enforce an
award and a general submission "did not
trouble this court in *Orion* * * *. Im-
plicit in the agreement to arbitrate is
consent to enforcement of that agree-
ment." 336 F.2d at 363, 4.

██ The fact that one party is a
branch of a foreign sovereign does not
affect the conclusion that by entering
into an arbitration agreement contain-
ing a submission such as here, the sover-
eign becomes amenable to suit. The
question of immunity does not bear on
the question of amenability, or personal
jurisdiction. What *Farr* and *Orion* com-
pel is that the Kingdom be treated as if
it is physically present.

Moreover, the branch of respondent
being sued is actually present. The Pur-
chase Directorate maintains an office
in New York, the one served; and it ne-
gotiated the charter party in New York,
perhaps at that same office. Thus no
doctrine of constructive presence by con-
sent is necessary.

## II. *Service*

Regardless, however, of what theory
makes the Purchase Directorate present,
service must be adequate. Here *Farr*
again arguably controls. *Farr* may be
read as meaning that an arbitration
agreement such as construed there gives
consent to service by any method de-
signed to give adequate notice, as well
as consent to personal jurisdiction, all as
a matter of federal law. In fact, how-
ever, *Farr* says that applicable New York
law is that consent to jurisdiction in-
cludes consent to service by any method
consistent with due process.

*Farr* was a suit against a foreign cor-
poration. Once it was held that service
was adequate under New York law, that
service sufficed in federal court by virtue
of Rule 4(d) (7), Federal Rules of Civil
Procedure. But that provision applies
only to parties described in Rule 4(d) (1)
or (3), and in our view respondent is
not one of them.

█ It is, of course, not an individual,
and Rule 4(d) (1) is inapplicable. Rule
4(d) (3) is not a catch-all for categories
of parties not otherwise considered in
Rule 4. The only entity covered in 4(d)
(3) that is remotely like respondent is
"other unincorporated association which
is subject to suit under a common name."
Beyond a doubt, if the Purchase Direc-
torate is subject to suit, it may be sued
under a common name, because a right
under the Arbitration Act is surely "a
substantive right existing under the
* * * laws of the United States."
Rule 17(b); see United Mine Workers
of America v. Coronado Coal Co., 259
U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975
(1922). The only question, then, is
whether respondent is an association.

█ An association ought not to be
defined to include an entity which lacks
membership; respondent is essentially
merely an agency of the Greek govern-
ment. Neither Rule 4(d) (3), nor any
other part of Rule 4, provides for service
on such a party. And even if respondent

were within Rule 4(d) (3), so that service according to state practice sufficed, since New York does not provide for service on respondent in the manner used here, there would be some difficulty in service.[1]

But the fact that Rule 4 does not provide a method for service on respondent does not mean that no service could be effective. Rule 83 permits "each district court, by action of a majority of the judges thereof" to "make and amend rules governing its practice not inconsistent with these rules." The Rule goes on to say, "in all cases not provided for by rule, the district courts may regulate their practice in any manner not inconsistent with these rules." See also 28 U.S.C. § 2071.

██ Rule 15 of the Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York says:

Whenever a procedural question arises which is not covered by the provisions of any statute of the United States, or of the Rules of Civil Procedure, or of the Rules of the United States District Courts for the Eastern and Southern Districts of New York, it shall be determined, if possible, by the parallels or analogies furnished by such statutes and rules. If, however, no such parallels or analogies exist, then the procedure heretofore prevailing in courts of equity of the United States shall be applied, or in default thereof, in the discretion of the court,

the procedure which shall then prevail in the Supreme Court or the Surrogates Court as the case may be of the State of New York may be applied.

And when there is no Federal Rule, and no local rule, the court may fashion one not inconsistent with the Federal Rules. Rule 83, supra; see In re United Corp., 283 F.2d 593 (3 Cir. 1960). There is no compelling reason why the court must fashion the rule in advance, although the better practice in a case such as this might be to secure an advance ruling, approving a given method of service.

██ But if neither service under Rule 4, or under a local rule was available here, and, for some reason, that part of Rule 83 authorizing *ad hoc* rules could not be used, then the court may fashion a rule outside the Federal Rules altogether, although this really amounts to the same thing as the *ad hoc* provisions of Rule 83. Story v. Livingston, 38 U.S. 359 [13 Peters 359], 10 L.Ed. 200 (1839) arose during the Equity Rules, uniform rules governing equity practice in the federal courts, like the Federal Rules today, but unlike the rules governing practice on the law side, which conformed to state practice. In *Story* the court observed:

We think the occasion, however, a proper one for this court to remark, if any such rule [one abolishing equity] has been made by the district court in Louisiana, that it is in violation of those rules which the Supreme Court of the United States has passed

---

1. There is no general provision for service on an association because under New York law an unincorporated association may not sue or be sued in its own name, Kirkman v. Westchester Newspapers, 261 App.Div. 181, 24 N.Y.S.2d 860 (1st Dept. 1941), aff'd 287 N.Y. 373, 39 N.E.2d 919 (1942); Rosen v. Alleghany Corp., 133 F.Supp. 858, 867 (S.D.N.Y.1955), although it may be sued in the name of its president or treasurer, N. Y. General Associations Law, McKinney's Consol.Laws, c. 29, § 13. See Commentary accompanying McKinney's N.Y.C.P.L.R. 311, p. 499.

Rule 4(d) (7) permits service "in the manner prescribed by the law of the state * * * for the service of a summons or

other like process upon any such defendant [as appears in Rule 4(d) (3)] in an action brought in the courts of general jurisdiction of that state." For arbitration actions in New York service at the time of this suit was governed by N.Y.C. P.A. § 1450, providing for personal service, substituted service, or service as the court directs, none of which occurred here. Contrast N.Y.C.P.L.R. 403(c), which now governs service in all special proceedings. Since in our view respondent is not within Rule 4(d) (3), we do not decide whether the power to direct proper service under § 1450 subsumed the power to approve service later.

to regulate the practice in the courts of equity of the United States. They are as obligatory upon the courts of the United States in Louisiana, as they are upon all other United States courts; and the only modifications or additions which can be made in them by the circuit or district courts, are such as shall not be inconsistent with the rules prescribed. 38 U.S. at 368.

The court went on to say that where the rules were silent, the lower courts should look to the practice of the high court of chancery in England.

Similarly it was held that where state law did not indicate any rule of practice on the law side to which the federal law court could conform, the court should make its own rule, consistent with common law principles. Thus it was held that where a state had not prescribed a method of service, so that the Conformity Act did not provide the federal court with any method, service according to common law rules sufficed. Barrow S.S. Co. v. Kane, 170 U.S. 100, 18 S.Ct. 526, 42 L.Ed. 964 (1898); Kaufman v. Garner, 173 F. 550, 554 (W.D.Ky.1909) ("general principles of jurisprudence").

In our view there is no inconsistency with the Rules in approving service in this case by ordinary mail on the respondent at its address within the state. Since Rule 4 is silent as to respondent, there is no competing method of service authorized by the Rules which may be said to have been intended to be exclusive. And the fact that service here is in a method which the Rules do not adopt directly for other types of parties is not a compelling distinction; state rules often adopt differing modes of service, and these are used in the federal courts through Rule 4(d) (7).[2]

Since respondent is not one of the parties dealt with in Rule 4(d) (3), our decision in Arrowsmith v. United Press International, 320 F.2d 219 (2 Cir. 1963) that whether a foreign corporation has done enough to make it present so that service on it under that Rule and under Rule 4(d) (7) will give jurisdiction is to be determined in the first instance by state law, is not directly in point. Moreover, we do not equate "presence," or amenability to suit, with service of process, as our treatment of these two questions here indicates, and we regard Rule 4 as speaking to service alone, and not both service and amenability. Since, unlike in *Arrowsmith*, where "presence" was not treated at all in the Rules, federal law has partly treated the question of service, in Rule 4, it is appropriate to look to federal law to fill in any gaps in that Rule.

In *Arrowsmith* it was "[o]ur belief that neither the federal legislature nor the federal rule-makers have had any intention to displace state statutes as to the taking of jurisdiction over foreign corporations in ordinary diversity cases * * *" 320 F.2d at 227. We deal here with a *casus omissus* both in the Federal Rules and in New York law. The absence of provision in either as to the manner of serving a foreign government cannot reasonably be considered to manifest a policy that no *in personam* actions against foreign sovereigns could ever be brought. It reflects rather that until the treaties and declarations of the decade beginning in 1948, restricting immunity of foreign governments to public or sovereign acts, see *Victory Transport, Inc.*, supra, 336 F.2d at 357–358, there was no occasion to make provision for service upon them, and that legislators and rule-makers have failed to catch up in their procedural provisions with the more substantive developments in this field of law. Moreover, in sharp contrasts to diversity actions against foreign corporations, the fashioning of provisions with respect to

---

**2.** We do not base our decision on the question of service on the argument that the making of the Charter Party with the New York Commercial Men's arbitration clause and the actual presence of respondent's Purchase Directorate amounted to a consent to service in any manner consistent with due process. Contrast Farr & Co. v. Cia Intercontinental de Navegacion, supra, where constructive presence operated to give consent to service.

service on foreign governments is a task peculiarly appropriate for federal courts. Compare Banco Nacional de Cuba v. Sabbatino, 376 U.S. 398, 423–427, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964).

In the light of the above, we are not disposed to follow Oster v. Dominion of Canada, 144 F.Supp. 746 (N.D.N.Y.), aff'd 238 F.2d 400 (2 Cir. 1956), cert. den. 353 U.S. 936, 77 S.Ct. 813, 1 L.Ed.2d 759 (1957),[3] or Purdy Co. v. Argentina, 333 F.2d 95 (7 Cir. 1964), cert. den. 379 U.S. 962, 85 S.Ct. 653, 13 L.Ed.2d 557 (1965), to the extent they hold that a sovereign cannot be served in federal court. See also Berlanti Const. Co. v. Republic of Cuba, 190 F.Supp. 126 (S.D. N,Y.1960), where personal service in Havana, Cuba, on the Minister of the Presidency of the Republic of Cuba, was held invalid under Rule 4(d) (7).

■ This is not to say that service on the sovereign may be effected on any representative of the sovereign. See Hellenic Lines, Ltd. v. Moore, 345 F.2d 978 (D.C.Cir.1965). We hold only that service on the branch which is a party to the contract sued on is sufficient.

■ Finally, it has not been suggested, nor do we believe, that the service here was inconsistent with due process.

### III. *Immunity*

■ On the question of sovereign immunity this case is identical to *Victory Transport, Inc.,* supra. There this court held that the claim of sovereign immunity would be denied when made by a branch of the Spanish Ministry of Commerce which entered into a voyage charter containing the same arbitration clause as here, for the transport of wheat purchased under the Agricultural Trade Development and Assistance Act, as here. Suit was to compel arbitration.

3. The court in *Oster* relied on Clark County, Nev. v. City of Los Angeles, 92 F. Supp. 28 (D.Nev.1950), for the proposition that there is no authority for service of process in a manner other than is set forth in the Federal Rules. But in *Clark*, suit was against a municipal corporation,

Moreover, although in *Victory Transport, Inc.* there had been no advice from the State Department to the court, here there is in evidence the letter from the Department to the Kingdom's representative, rejecting the claim of sovereign immunity, on the ground that "the acts on which the suit is brought are private acts (jure gestionis)," and appending the Tate letter adopting the restrictive theory of sovereignty.

Affirmed.

a category of defendant service on which is covered by the Rules. Rule 4(d) (6). That method, of course, is exclusive; but the case is not authority for the holding in *Oster*, since the Rules are silent as to the category of defendant there.