## Case No. 5,613.

### GORDON v. LEWIS et al.

[2 Sumn. 143.] [1]

Circuit Court, D. Maine. May Term, 1835.

MASTER IN CHANCERY— EXCEPTIONS TO REPORT— MORTGAGE—REDEMPTION—RECEIPT OF RENTS BY MORTGAGEE — SET-OFF IN EQUITY — SECOND MORTGAGEE.

1. Whatever has been insisted upon before the master, is considered as waived or abandoned, if it is not made matter of exception; unless it appears on the fact of the report, that the master has committed an error.

[Cited in Hatch v. Indianapolis & S. R. Co., 9 Fed. 858; Celluloid Manuf'g Co. v. Cellonite Manuf'g Co., 40 Fed. 477.]

[Cited in Barbour v. Tompkins, 31 W. Va. 410, 7 S. E. 5.]

2. Where the defendant recovered and occupied premises, as assignee of the original mortgagee, he must be deemed to have received the rents and profits under that title; and he cannot set up an adverse title against the mortgagor or his assignees, to protect himself from accountability therefor.

3. Where a mortgagee is in possession, and the annual rents and profits of the mortgaged premises exceed the interest of the debt due, it seems, that he should pay interest on the surplus rents and profits.

[Cited in Green v. Wescott, 13 Wis. 608; Moshier v. Norton, 100 Ill. 66.]

4. In ordinary cases, where the relation of mortgagor and mortgagee is uncontroverted, if a mortgagee receive the rents of a mortgaged estate, after his debt has been satisfied, and retain them to his own use, without paying them over to the mortgagor, he is chargeable with interest.

5. If, however, there are sufficient equitable circumstances in favor of the mortgagee, as if he retained the rents under a mistake, supposing the rights of the mortgagor extinguished,

1 [Reported by Charles Sumner, Esq.]

he would not be liable for interest, until after notice of the adverse claim.

[Cited in Barnett v. Nelson, 54 Iowa, 47, 6 N. W. 51.]

6. No allowance is made for expenditures on mortgaged premises, if the value of the premises is not enhanced thereby.

7. Where the answer of the defendants asserts a mortgage title in the whole of the premises, it is not competent for them to set up a different title, as for a moiety, before the master.

8. Courts of equity follow the law in matters of set-off, unless there is some equity attaching to the particular transactions between the parties.

[Cited in Farmers' Loan & Trust Co. v. Northern Pac. R. Co., 58 Fed. 266.]

9. The surplus rents and profits, after the satisfaction of the mortgage debt, may be assigned as a chose in action, and the assignee maintain a suit in equity for an account.

10. In the view of a court of equity, the rents and profits are incidents de jure to the ownership of the equity of redemption.

[Cited in Jewett v. Cunard, Case No. 7,310.]

[Cited in Merriam v. Goss, 139 Mass. 82, 28 N. E. 450.]

11. A second mortgagee, after the satisfaction of the first mortgage, may claim from the first mortgagee, after notice, the rents and profits, which have not been accounted for to the mortgagor, so far as the same are necessary to the satisfaction of his mortgage.

[Cited in Mount Pleasant v. Beckwith, 100 U. S. 527.]

12. Webb mortgaged certain premises in 1808, to Haskell; Haskell in 1816 assigned his mortgage to the defendant Lewis; Lewis in 1831 assigned the same to the Portland Manufacturing Co. The mortgagor Webb in 1812, conveyed the mortgaged premises to John Gordon, who, in 1832, conveyed the same to the plaintiff. *Held*, that no decree can be made for the payment of the rents and profits to the plaintiff, until an opportunity has been given by supplemental proceedings for Webb and the other parties in interest to appear.

13. A mortgagee shall not get any advantage out of the mortgage fund beyond principal and interest.

[Cited in Green v. Cross, 45 N. H. 586.]

14. Between mortgagor and mortgagee, the latter, when in possession, must account for the actual rents and profits, if they can be ascertained; if they cannot be, then resort may be had to a fair occupation rent.

[Cited in Upham v. Brooks, Case No. 16,-797.]

This is a bill in equity to redeem certain mortgaged premises, brought by the plaintiff [Jesse Gordon], as assignee of the mortgagor of the mortgaged premises, against the defendants [Archelaus Lewis and the Portland Manufacturing Company], as assignees of the mortgagee. The bill charges, that Joshua Webb, on November 1st, 1808, mortgaged the premises to Mark Haskell; Haskell on the 31st of August, 1816, assigned the mortgage to the defendant, Lewis; and Lewis assigned the same to the Portland Manufacturing Company, on the 3d of August, 1831. It further charges that the mortgagor, Webb, on the 14th of April, 1812, conveyed the mortgaged premises to John Gordon; and that John Gordon, on the 23d of January, 1832, conveyed the same to the plaintiff. It then alleges a tender, &c. &c., and prays an account and redemption. The answers of the defendants admit the mortgage of the premises, excepting an old gristmill, which is said to have belonged to Jonathan Webb, and the assignment of the same mortgage, as charged in the bill. They require proof of the plaintiff's title; and then assert, as matter of defence, an entry into the premises after condition broken, for the purpose of foreclosure by Lewis on, or from and after the 16th of August, 1816, and open and visible, and exclusive possession by him of the same for more than three years thereafter, and until his conveyance to the company, whereby he acquired an absolute title under such entry and foreclosure; and then denies the right to any account, &c. &c. The cause was heard in May term, 1834, on the bill and answer, and a decree was awarded [Case No. 5,612] for a redemption of the mortgage, and for taking an account according to the prayer of the bill; and the cause was referred to a master to take an account, and to make due report thereof to the court. At this term, the cause came up again on exceptions taken by the defendants to the master's report. The nature of the report, and the exceptions thereto, will sufficiently appear in the opinion of the court.

C. S. Daveis, for plaintiff.

S. Greenleaf, for defendants.

Before STORY, Circuit Justice, and WARE, District Judge.

STORY, Circuit Justice. This cause has now come before us, upon the master's last report, made since the subject has been recommitted to him, in pursuance of the order of the court, on the 21st of January last; and upon the exceptions filed by the defendants to that report. I shall examine the exceptions in the order, in which they stand, and not in the order in which they have been brought before the court by the defendant's counsel, in the argument at the bar. Before, however, I proceed to that examination, it is proper to state, that nothing is properly before the court, except the matter of those exceptions; for whatever may have been insisted upon before the master, by way of argument or objection, is considered as waived or abandoned, if it is not made matter of exception, unless, indeed, it manifestly appears upon the face of the report itself, that the master has committed an error, which ought to be corrected. I mention this the more freely, because the argument of the defendant's counsel has insisted upon some matters, which were taken by way of objection or reasoning at the hearing before the master, and which are not directly within the scope of any of the exceptions to the report; and certainly, unless such objections appear now maintainable upon the very face of the facts contained in the report, they must be deemed to have been abandoned.

The first exception respects the allowance, made by the master, of the rents and profits of the Little Revenge Mill. The decision of the master on this point was perfectly correct. The defendant Lewis actually recovered and occupied that mill in virtue of his title as assignee of Haskell, the original mortgagee, and he must be deemed to have received the rents and profits under that title, and to be accountable accordingly. He cannot now be permitted to set up an adverse title against the mortgagor or his assignees, to protect himself from such accountability. The reasoning of the master on this point is entirely satisfactory.

The second exception in its actual form is equally unmaintainable. It is, that the master has not stated the evidence or mode of acquisition of Lewis's title to the said mill, although it was exhibited before him. Now, certainly, it was no part of the master's duty, under his commission, to ascertain or report such title. That title, so far as it was put in issue by the bill and answer, had been already passed upon by the court; and was not within the scope of his commission. There are no facts in the report, which bring this exception before the court, or justify it.

The third exception is to the allowance of interest on the rents and profits, and making annual rests, and charging interest on the value of the premises. The commission of the master expressly authorized him "to cast interest on the rents and profits, making proper rests." He has cast interest accordingly; and if any rests were proper, annual rests were undoubtedly to be made. There is no error, therefore, on these points in the master's report. The question is necessarily open upon the report, and is reserved for the court

to decide, whether such interest is allowable or not. The other part of the exception, (as to charging interest on the value of the premises), seems unfounded in fact, unless it refers to the interest allowed as an occupation rent, or such as might have been received by the Portland Manufacturing Company after their purchases. If it does so refer, then it is governed by the remarks already made. The proper construction of the master's report seems to be, that he allowed the interest as an occupation rent. The question, then, which alone is left for consideration under this head, is, whether interest ought, upon the whole circumstances of the case, to be charged upon the annual rests of rents and profits. It appears by the master's report, that the mortgage was in fact extinguished by payment from the rents and profits on the 23d of April, 1818. The question as to interest seems narrowed down, by the argument, to the period, which has since elapsed. It could scarcely admit of doubt, that as to the antecedent period the report of the master was as favorable to the defendants, as the principles of a court of equity would allow. Where a mortgagee is in possession, taking the rents and profits, and these annually exceed the annual interest of the debt on the mortgage, there is the strongest reason for directing interest to be paid upon the surplus rents and profits, to keep pace (pari passu) with the interest on the debt. The cases of Shephard v. Elliot, 4 Madd. 254; Gibson v. Crehore, 5 Pick. 160; Saunders v. Frost, Id. 259; and Reed v. Reed, 10 Pick. 398,—fully support such a charge. In point of fact, however, it does not appear by the report, that any interest was allowed on the rents and profits during the antecedent period.

There is great good sense in the doctrine held by Lord Gifford in Wilson v. Metcalfe, 1 Russ. 535, that if a mortgagee, receiving the rents of a mortgaged estate, after his debt has been satisfied, does not immediately pay them over to the mortgagor, but retains them to his own use, he is availing himself of another man's money, and ought to be charged with interest; and that it makes no difference, whether he is receiving such rents, or is charged with an occupation rent. The case of Quarrell v. Beckford, 1 Madd. 269, turned upon similar considerations. See, also, Davis v. May, Coop. 238, 19 Ves. 382; Archdeacon v. Bowes, 13 Price, 369. As a general rule it appears to me, that this doctrine ought, in the ordinary cases of persons standing in the admitted relation of mortgagor and mortgagee, to be adopted. But it is but a general rule. There must be some exceptions to it, where it would be inequitable to make such a charge. And I cannot but think, that the proper cases for such a charge are those only, where there is a present duty to pay over the rents and profits, arising from the uncontroverted relation of mortgagor and mortgagee. If the mortgagee has reason bonâ fide to treat the rights of the mortgagor as extinguished; or

if he bonâ fide supposes himself, under circumstances, fairly authorizing such a belief, to be the absolute owner of the premises; it seems to me, that he is not to be affected with interest, if it turns out in the event, that he is under a mistake, as to his absolute title; for he has not knowingly deviated from his proper duty. In such a case, it seems to me, that the right to interest does not accrue, until some demand is made upon him, or some notice given of the claim; and then interest may properly be charged from that period. Now, it is very certain, in the present case, that no claim or notice was brought home to the defendant, Lewis, by John Gordon (the second mortgagee or assignee of the mortgagor), while he held the estate; nor by the plaintiff until the time when he brought the present suit, in March, 1832. The original mortgage by Webb to Haskell was in November, 1808, the assignment of it by Haskell to Lewis in August, 1816, and the conveyance by Lewis to the Portland Manufacturing Company in August, 1831. John Gordon's title, as second mortgagee, commenced in April, 1812; and the plaintiff's title, as his assignee, in January, 1832. No demand was ever made by John Gordon against Haskell or Lewis, or the manufacturing company, during a period of nearly twenty years after the commencement of his title. And taking the other facts in the case, as they appeared at the original hearing, the adverse title under certain levies by execution, and the entry for a foreclosure (though neither became effectual in point of law,) and the long and undisturbed possession by Lewis, ever since August, 1816, I am not satisfied, that Lewis had not a right to treat the equity of redemption as being abandoned, or at least as not worth reclaiming. I see no reason, therefore, for holding the plaintiff entitled to any interest, under all the circumstances of this case. Interest is not of course; and is allowable only, when the mortgagor or his assignee makes out a strong case in equity. The case of Archdeacon v. Bowes, 13 Price, 353, and Quarrell v. Beckford, 1 Madd. 269, establish, that interest is not of course from the period, when there is a surplus in the hands of the mortgagee; but where there are any equitable circumstances it will be confined to the period of notice. In this very case, the plaintiff himself does not in his bill set up an averment, that the mortgage has been paid, or that any surplus is in the hands of the mortgagee. On the contrary, he has tendered in court a sum as still due on the mortgage. My opinion, on the whole, is, that under all the circumstances of this case, interest ought not to be allowed.

The fourth exception is, that the defendants are not allowed for the improvements made by the Portland Manufacturing Company after their purchase; and that the master has not stated the evidence thereof. It does not appear by the report, that the master was requested to state the evidence on this point. The master does, however, state,

that the company have expended money on the privilege by the erection of a dam in a place different from that, where the old dam of the Haskell saw mill stood (principally from the materials of the old dam,) but, that he is not satisfied, that the value of the mortgaged premises has been increased thereby. Now under such circumstances, it is clear, that the company are entitled to no allowance for such expenditures; for they have made no lasting or beneficial improvements on the estate. See Moore v. Cable, 1 Johns. Ch. 387; Russell v. Blake, 2 Pick. 505; Saunders v. Frost, 5 Pick. 259, 270; Reed v. Reed, 10 Pick. 398. This exception ought, therefore, to be overruled.

The fifth exception is, that the defendants are charged with the rents and profits of the whole of the tracts described in the deed, whereas (as is said) one half only of the same was mortgaged, and the evidence thereof was before the master. The bill asserts, substantially, a title in the defendants to the whole tracts described in the mortgage deed; and the answer of the defendants admits a title to the whole tracts described in the same deed, as held by the defendants. And upon this state of facts the original decree proceeded to direct an ascertainment of the rents and profits, &c. before the master. When the matter came on before the master, upon the recommittal of the report, the defendants offered in evidence a deed, purporting to be the original mortgage deed of the 1st of November, 1808, from Webb to Haskell, in which the original words of conveyance included the whole tract; and there was an interlineation of words cutting it down to one moiety. The plaintiff objected before the master to the admission of the deed so offered, it never having been an exhibit or filed in the cause. The master admitted the deed, and his report contains an alternative view of the state of the case, as the court shall decide, whether the deed was admissible or not. My opinion is, that the deed was inadmissible as evidence to establish, that the mortgage was but of a moiety of the estate. I do not meddle with the case, as a matter of suspicion, or of question as to the genuineness or falsity of the interlineation. The true ground is, that the answers of the defendants assert a mortgage title in the whole of the premises; and it is not now competent for the defendants to set up a different or more limited title upon a collateral inquiry before the master. That would be to contradict the answers, and to try a very different case from that asserted in the pleadings. The cause has been heard upon the bill, answers and proofs; and an interlocutory decree had; and the defendants are now at liberty to substitute a new case for that formerly stated and already decided on. It may be their misfortune, or their fault; but it is irremediable in this stage of the cause. The exception, therefore, is unmaintainable, and the report of the master must stand as to the rents and profits of the whole of the premises.

The sixth exception is in substance an objection to the title of the plaintiff to recover or receive the surplus rents and profits accruing after the satisfaction of the first mortgage, and before the conveyance to him in January, 1832. And, in support of this objection it is asserted, that John Gordon is insolvent, and was, at the time of the accruing of these rents, largely indebted to Lewis, and that he had a right of set-off against such surplus of his debt so due. Now, it might be a sufficient answer to this suggestion, that the master reports, that the plaintiff denied any such indebtment, and no proof was offered before him to establish the fact clearly; therefore, the suggestion of indebtment and right of set-off must, under such circumstances, be treated as a new unfounded claim. But if there had been proofs of such an indebtment, still it would not follow, that the right of set-off would exist. There is no pretence to say, that such a set-off to the mortgagor's claim would be allowable at law. In matters of set-off courts of equity generally follow the law, unless there is some equity attaching to the particular transactions between the parties; such as mutual credits. Upon this I need do no more than to refer to the authorities, which were acted upon in Jackson v. Robinson [Case No. 7,144], and Greene v. Darling [Id. 5,765]. In the present case there is no pretence of any mutual credit; that is to say, of any credit given by Lewis to John Gordon, on account of the supposed debt due from Lewis to Gordon for rents. The whole structure of the answer disclaims any such intendment. It insists upon an adverse exclusive title to the mortgaged premises, and, of course, to the rents and profits.

The right of the plaintiff to the surplus rents and profits is, upon the structure of the bill, wholly dependent upon the point, whether it is an incident to the exclusive and absolute ownership of the equity of redemption. The bill does not assert any title to such rents and profits in virtue of any assignment thereof, in verbis, as rents and profits. Indeed (as has been already suggested), the bill not only does not suppose there to be any surplus rents and profits capable of assignment; but it supposes a balance to be due on the mortgage, and tenders a payment of it in order to a redemption. There is no question, that an assignment may be lawfully made of such surplus rents and profits, as a chose in action, and that the assignee may, in virtue thereof, maintain a suit in equity for an account and satisfaction under such a title by assignment. But, then, if such a title is relied on, it must be alleged in the bill, and put in issue; for the decree must be secundum allegata et probata, and not merely secundum probata. So that the present bill puts out of question all claim under any assignment of the rents and

profits as such; and if the rents and profits are recoverable at all by the plaintiff, they are so as incidents to the ownership of the equity of redemption. My opinion is, that they do attach to such ownership de jure, in the view of a court of equity.

The mortgage to Haskell was extinguished by satisfaction out of the rents and profits, on the 23d day of April, 1818. At that time, and from thence down to January, 1832, when John Gordon conveyed the mortgaged estate to the plaintiff, he continued the qualified owner thereof, under his original mortgage deed from Webb, in April, 1812; and as such, he was entitled to the whole surplus rents and profits in the hands of the mortgagees, under the first or Haskell mortgage, as far as his title extended; that is, as far as they were necessary to satisfy his (Gordon's) mortgage. See Archdeacon v. Bowes, 13 Price, 353, 362, 363, 365, 368, 373. Beyond this, the surplus rents and profits belonging to Webb, the mortgagor, unless his title to the equity of redemption has since been absolutely released or extinguished. Now, the plaintiff, at most, can take no more under the assignment of John Gordon, to him, than the title of the former under his mortgage. The bill does not in terms assert any absolute title to the equity of redemption to the premises, either in John Gordon or in the plaintiffs, or any release or extinguishment of Webb's equity of redemption. It asserts, indeed, that, in virtue of the deed of the 14th of April, 1812, John Gordon "became seized of all the right, interest and estate of the said Joshua Webb, whether in fee or in equity, to redeem the same;" and then proceeds to allege, that all the right, title, interest and estate, which he (John Gordon) had in virtue of the aforesaid conveyance in the premises, was assigned to the plaintiff by the deed of the 23d day of January, 1832. But in both instances, a profert is made of these deeds by the bill, and upon the production and proofs of them, it is apparent, that the title is nothing but a mortgage title. So that the bill asserts no absolute title in the plaintiffs; and the proofs establish no extinguishment of Webb's equity of redemption. There are then no allegations or proofs of any absolute title to the premises in the plaintiff. No account has been taken to show, what is the state of accounts between the plaintiff and Webb, or to show, what is due by Webb on the mortgage to John Gordon. Webb is not even made a party to the bill. So that it is clear, that his rights and interests cannot, and ought not to be disposed of in this suit, in its present form. Under these circumstances, a decree cannot be made, directing the amount due for rents and profits to be paid over to the plaintiff. The most that can be done, is to order this amount to be brought into court, subject to the order of the court; and to retain the fund until an opportunity is given for all the parties in interest to appear, by supplemental proceedings, to litigate and establish their just rights thereto. I had at first some hesitation, whether, under the actual posture of the case, we ought to go quite so far. But the case of Archdeacon v. Bowes, 13 Price, 353, 373, seems to me fully to justify this proceeding; as it also conclusively establishes the right of a second mortgagee, after the satisfaction of the first mortgage, to claim from the first mortgagee, after notice, all the rents and profits, which have not been paid over or accounted for, to the mortgagor, so far as they are necessary for the satisfaction of the second mortgage. See Parker v. Calcraft, 6 Madd. 11, 12; Berney v. Sewell, 1 Jac. & W. 647; Ex parte Wilson, 2 Ves. & B. 252. Indeed, I should have entertained no doubt upon this last point, if there had been no authority to support it, upon the general principles flowing from the relationship of the parties as mortgagees.

The seventh and last exception to the master's report is, that he has allowed nothing for the extra exertions of Lewis, in taking care of the mortgaged property, and obtaining the rents and profits. This exception does not require any elaborate consideration. There is nothing in that report, which establishes the right of Lewis to any compensation in taking care of the property and obtaining the rents and profits beyond what the master has allowed him.

I have not thought it necessary to go over the other grounds of objection to the report, suggested at the argument. So far as they have not been already answered, they were in effect disposed of by the former opinion of the court. For instance, the title under the levy in execution having been held void, it is impossible, in a court of equity, that the defendants can be permitted to avail themselves of that as an adverse title to hold possession of the premises, when they had a good title as mortgagees to the possession, which the mortgagor and his assignees could not impugn or disturb. But, in truth, the objection is not so properly addressed to the report itself, as it is to the former opinion of the court, and to the order, on which that report is founded. Then, again, as to the rents and profits, it is contended, that the actual rents and profits ought not to be charged against the defendants, but only what is to be deemed a fair rent, by which must be understood a fair occupation rent. I know of no rule of a court of equity, which could justify such a course of proceeding on the part of the court. No principle is better established than the principle, that a mortgagee shall not get any advantage out of the mortgage fund beyond his principal and interest. See Gubbins v. Creed, 2 Schoales & L. 218; 4 Kent, Comm. (2d Ed.) lect. 58, pp. 166, 167; 3 Pow. Mortg. (Coventry & Rand's Ed.) p. 949, note e, 2. Between mortgagor and mortgagee, the latter, when in possession, must account for the actual rents and profits received or made by him, if these rents and profits

can be actually ascertained. Where they cannot be, there must be a resort to a fair occupation rent. Here the master has ascertained the actual rents and profits. In both cases, the mortgagee may entitle himself, under circumstances, to compensation for all lasting improvements upon the premises. But in the present case, there is not the slightest proof, that the master would have disregarded any such claim, if properly substantiated. His report states no such fact; and justifies no such conclusion.

Upon the whole, my opinion is, that there ought to be a decree to bring the surplus rents and profits of the whole mortgaged premises into court, to abide the future orders of the court, upon the proper supplementary proceedings. The personal representatives of Lewis, are to bring into court, if they have assets, the surplus of the rents and profits, from the extinguishment of the mortgage on the 23d of April, 1818, to the time of the sale to the Portland Manufacturing Company, on the 3d of August, 1831. From that period the Portland Manufacturing Company are to bring into court the rents and profits. As to the possession of the premises, it is plain, that a decree must pass for an immediate possession, since the original mortgage to Haskell has been long since satisfied. A decree will be accordingly framed upon these principles, as the district judge concurs in this opinion.

[See Case No. 5,614.]