## HATCH *v.* INDIANAPOLIS & SPRINGFIELD R. Co. and others.

*(Circuit Court, D. Indiana.* January 21, 1882.)

1. MASTERS IN CHANCERY—REPORTS OF, AND EXCEPTIONS THERETO.

Masters are usually employed in taking accounts and making computations, and in making inquiries and reporting facts. In such references it was usual for the masters to prepare drafts of their reports before argument, and argument was heard by the masters only on objections to the drafts. In such cases, manifestly, parties were entitled to an inspection of the drafts, and to be heard on their objections thereto.

2. SAME—PRACTICE.

But if a reference is made embracing questions of law and fact, and after hearing the testimony, and the arguments of counsel, the master prepares a report of his findings, there is no good reason for observing the formalities of the old practice in submitting the report to the parties for hearing thereon before the master.

3. SAME—SAME.

It is not the practice in this district, nor in this circuit, for the master, after having heard full argument, to submit a draft of his report to the parties for a hearing thereon upon objections thereto. When a case has been fully argued in the first instance the legal right of the unsuccessful party to make objections before the master to the draft of his report, and argue the same, is not recognized in practice.

4. SAME—RULES 77 AND 83 OF THE SUPREME COURT.

The rules of the supreme court for conducting references before masters provide a simple and expeditious procedure, and were obviously intended to dispense with the old formalities incident to the settling, etc., of the master's report. *Vide* rules 77 and 83. These rules establish a procedure in themselves, and reference to the practice of the high court of chancery in England, as it existed in 1842, for the formalities attending the settlement, or making of masters' reports, and the entering of exceptions thereto, is unnecessary.

In Chancery.

*Edwin H. Abbott* and *C. D. Page,* for complainant.

*Baker, Hood & Hendricks, Roache & Lamme,* and *James M. Johnson,* for respondents.

GRESHAM, D. J. The bill in this case alleged that the railroad company was indebted to the complainant in a large sum for labor and materials furnished in the construction of a part of the respondents' road; that certain stockholders, who were made defendants, had never paid their stock subscriptions; and that the company was insolvent and the road had been abandoned. The court was asked to ascertain and decree the amount due from the company to the complainant; also for a decree against the individual stockholders, requiring them to pay into court a sum sufficient to satisfy the complainant's demand and costs of suit.

After the case was put at issue it was referred to the master to take and report the testimony and a finding thereon. Both parties appeared before the master and took testimony, without objecting to the terms of the reference. Having heard the arguments of counsel on both sides, the master prepared his report and filed it in the clerk's office on the twenty-fourth day of August, 1880. This was done without notice to either party that the report was ready to be filed. The same day, or within a day or two thereafter, the complainant's counsel were furnished with a copy of the report. Nothing further was done in the case until the twenty-third day of September, when the complainant's counsel filed a written motion to recommit the report to the master for review, because the master had gone beyond the matters to him referred, had omitted to report upon divers matters properly included in the reference, and had filed his report without submitting the same in draft to the complainant, and allowing him opportunity to make his objections thereto, and thus lay the requisite foundation, under the rules and practice established by the supreme court, for taking valid exceptions to the report if the master should overrule any of said objections.

It is urged by the complainants' counsel that, after writing out his report, and before filing it in the clerk's office, the master should have notified counsel that it was in draft, thereby affording them opportunity to point out supposed errors, and make objections to his conclusions, so as to give him an opportunity of considering and correcting his report, and that no exceptions, according to correct chancery practice, can be heard by the court which have not been carried in before the master.

It is also further urged by the counsel that the equity rules do not cover all the details of equity practice, and that this is evident from rule 90, which adopts the English practice in omitted cases, as it was known and understood when the equity rules were adopted. These rules were promulgated by the supreme court and took effect on the second day of August, 1842. It seems to have been the practice in England, for some time before our equity rules were adopted, that a party should never except, unless he had first objected to the draft of the report before the master, and when there was no objection brought in it was allowed good cause to discharge the exception. That being the practice, of course the unsuccessful party was entitled to notice that the report was in draft. 2 Daniell, (2d Am. Ed.) 1483. This seems to be recognized as the correct practice in some of the courts of this country. *Troy, etc.,* v. *Corning,* 6 Blatchf. 328; *Gaines* v. *New*

*Orleans,* 1 Woods, 104; *Church* v. *Jaques,* 3 Johns. Ch. 77; *Gleaves* v. *Ferguson,* 2 Tenn. Ch. 589; *Gordon* v. *Lewis,* 2 Sumn. 143; *Byington* v. *Wood,* 1 Paige, 145.

In *Story* v. *Livingston,* 13 Pet. 359, the court say:

"Strictly, in chancery practice, though it is different in some of our states, no exceptions to a master's report can be made which were not taken before the master; the object being to save time and to give him an opportunity to correct his error or to reconsider his opinion. Dick. 103. A party neglecting to bring in objections cannot afterwards except to the report, (Harr. Ch. 479,) unless the court, on motion, see reason to be dissatisfied with the report, and refer it to the master to review his report, with liberty to the party to take objection to it. 1 Dick. 290; Madd. Rep. 340, 555. But, without restricting exceptions to this course, we must observe that exceptions to a report of a master must state, article by article, those parts of the report which are intended to be excepted to."

While the practice contended for by the complainant is here referred to as correct, according to strict rule, the court declined to enforce it against the excepting party.

*McMicken* v. *Perin,* 18 How. 507, was decided in 1855, some years after the adoption of the equity rules, and without alluding to rule 83. After referring to *Story* v. *Livingston* as deciding that no objections to a master's report can be made which are not taken before the master, the court says: "The court will not review a master's report upon objections *taken here* for the first time." The exceptions to the master's report had not been taken in the circuit court, but for the first time in the supreme court.

The practice contended for by the complainant was referred to in *Story* v. *Livingston* as being correct according to strict rules, without, however, being enforced; and in *McMicken* v. *Perrin* the question was not before the court.

Masters are usually employed in taking accounts and making computations, and in making inquiries and reporting facts. In references of this character drafts of the reports have been prepared before argument, and argument was heard before the master only on objections to the drafts. In such cases it is clear the parties were entitled to inspect the reports and to be heard on such parts of them as were objected to. But if a reference is made embracing questions of law as well as fact, and after hearing the testimony and the arguments of counsel, as was done in this case, the master prepares a report of his findings, I can see no good reason for observing the formalities of the old practice. It resembles a trial before a referee

when the parties are fully heard, and their respective points and positions are fully stated to and understood by the trier. This case was argued at great length before the master, and he, no doubt, comprehended the exact points in controversy. If the complainant's motion should be sustained, his counsel would probably go before the master, and, in support of objections to the draft, again repeat the arguments that he urged in the first instance.

It is not the practice in this district, nor, as I understand, in this circuit, for the master, after hearing full argument, to prepare a draft of his report and then notify the parties and summon them to make objections. When the case has been fully argued in the first instance, the legal right of the unsuccessful party to go before the master, make objections to the draft of the report, and argue those objections, is not recognized in practice.

The equity rules provide for conducting references before masters in a simple and expeditious manner. It is fair to assume that in adopting these rules the supreme court meant to dispense with the old formalities incident to settling the master's report. Rule 77 provides that the—

"Master shall regulate all the proceedings in every hearing before him, upon every such reference, * * *" and "the master," says rule 83, "as soon as his report is ready, shall return the same into the clerk's office, and the day of the return shall be entered by the clerk in the order book. The parties shall have one month from the filing of the report to file exceptions thereto; and if no exceptions within that period are filed by either party, the report shall stand confirmed the next rule-day after the month is expired. If exceptions are filed, they shall stand for hearing before the court, if the court is then in session; or, if not, at the next sitting of the court which shall be held thereafter."

Nothing is said here, or in any of the other rules relating to practice before masters, about notice to parties that the report is in draft, and to appear before the master and settle it. "As soon as his report is ready," "the master shall return it into the clerk's office," and "the parties shall have one month from the filing of the report to file exceptions thereto." The report is ready, within the meaning of rule 83, when it is written.

It is not necessary to refer to the practice of the high court of chancery in England, as it existed in 1842, for the formalities attending the settlement or making of masters' reports, and the entering of exceptions thereto. These matters are provided for in the equity rules. I have considered the only question that seemed to be relied

on in the argument of the motion. During the argument the complainant's counsel, inasmuch as they might have been misled as to the practice in this district, were offered leave by the court still to file exceptions to the report, notwithstanding the fact that the time limited by the rule for taking exceptions had elapsed. This offer they declined. In declining it counsel said they preferred to stand upon their legal rights.

Motion overruled.