FIDELITY INS. & SAFE-DEPOSIT CO. v. SHENANDOAH IRON CO.

*(Circuit Court, W. D. Virginia. May 14, 1889.)*

1. PRIORITY OF LABOR AND SUPPLY LIENS—MORTGAGE BONDS.
    By the general principles of equity, claims for materials, supplies, and labor furnished to a mining and manufacturing company are not entitled to priority over the mortgage bonds thereof.

2. DECISION OF STATE COURT—PRIORITY OF LIENS.
    The decision of the court of appeals of Virginia, (Fidelity Ins., etc., Co. v. Shenandoah Val. R. Co., 9 S. E. Rep. 759,) declaring the acts of Virginia of March 21, 1877, and April 2, 1879, unconstitutional, so far as they attempted to give material and supply claims priority over mortgage bonds, furnishes the rule for this court, and an exception to a master's report which gives priority to such claims will be sustained.

3. CONSTITUTIONAL LAW—OBJECT EXPRESSED IN TITLE OF ACT.
    The act of April 2, 1879, entitled "An act to amend and re-enact the first and second sections of an act approved March 21, 1877, entitled 'An act to secure the payment of the wages or salaries of certain employes of railway, canal, steam-boat, and other transportation companies,'" is in violation of Const. Va. art. 5, § 15, which provides that "no law shall embrace more than one object, and that shall be expressed in its title," in so far as it attempts to give the claims of employes of mining and manufacturing companies a superior lien to that of the mortgage bondholders, because the object expressed in the title relates to transportation companies only.

4. EXCEPTIONS TO MASTER'S REPORT—ALLEGATIONS.
    Where a master's report had given priority to certain labor and supply claims under an unconstitutional statute, which was in contravention of the general rules of equity, it was not necessary, on exception thereto, to allege the unconstitutionality of the act.

5. RECEIVERS' CERTIFICATES—CONSTRUCTION OF ORDER.
    Under an order authorizing the issuance of receivers' certificates to pay taxes, "wages, and freights due and to become due," certificates given to secure a debt to a merchant, incurred by giving orders upon him to employes in payment of wages, were invalid.

6. SAME—COSTS.
    One who signs exceptions to a master's report, as trustee for numerous bondholders, is responsible for the costs, and an objection thereto for want of a party so chargeable is invalid.

7. SAME—TIME OF FILING.
    Under the rules of practice in equity promulgated by the supreme court in 1842, r. 83, exceptions to a master's report may be filed at any time within a month after the filing of the report.

In Equity. On exceptions to a master's report.

*J. S. Clark* and *W. H. Travers,* for mortgage bondholders.

*Barton & Boyd, W. B. Compton, E. S. Conrad,* and *J. H. Smoot,* for other creditors.

PAUL, J.    On October 12, 1888, all parties in interest appearing by counsel and consenting thereto, it was ordered that the order entered on March 8, 1888, in the cause of *Seventh National Bank* v. *Shenandoah Iron Co.,* appointing G. E. Lipe as special master to report certain accounts, the master's report thereunder, the exceptions thereto, and also the vouchers, accounts, and reports filed in said cause, be held and taken, to all intents and purposes, as if filed in this cause, with leave to parties in interest to file exceptions to said special master's report, dated June 15, 1888, and filed October 12, 1888.    On the same day, October 12, 1888, an order was entered in the suit of *Seventh National Bank* v. *Shenandoah Iron Co.* dismissing the same for want of equity; but the special master's report was, by consent of all parties in interest, filed in the cause now in hearing, to have the same effect as if it had been taken in this cause, and numerous exceptions were filed thereto.    The most important of those exceptions were filed by the first mortgage bondholders, and are as follows, in substance:    (1) That claims 1–9 are erroneously in class 4, because, being for hay and oats furnished the Shenandoah Iron Company before the appointment of the receivers, they are not entitled to priority over the first mortgage; (2) that claims 10–12, 14–17, $31,481.70, are erroneously classed in class 4, because they are not entitled to priority over the first mortgage; (3) that claim 13 is erroneously in class 4, because, being for lumber furnished the Shenandoah Iron Company before the appointment of the receiver, it is not entitled to priority over the first mortgage; (4) that receivers' certificates 2–13 are erroneously in class 2, because exceptants insist that said receivers' certificates are not liens prior to their mortgage.    There are a number of other exceptions, but the questions presented by them will all be answered in the determination of those above recited.    Counsel for "other creditors" have, in argument, urged the following objections to the consideration of these exceptions:

*First.* "That they are not signed by any one who would be liable for costs under the provisions of equity rule 84; that no bondholder is known by name in the record; and that, in the event of the failure of the bondholders to maintain their exceptions, there is no one against whom costs could be recovered."    It is true that the bondholders are not parties to the suit by name.    They are represented by their trustee, the plaintiff in this suit, and any step taken in their name is virtually taken in the name of the trustee.    They are really the parties in interest in the suit. They are the beneficiaries under the mortgage,—the *cestuis que trust;* and in filing exceptions, by counsel, the bondholders are only doing what the trustee might do, and the court sees no difficulty in entering a decree against the trustee for costs, in the event the bondholders fail to sustain their exceptions.    It would be entirely impracticable to make all the bondholders parties defendant to the suit, or to have them file exceptions in their own names to the master's report.    They are represented

by counsel throughout the proceedings. This objection the court considers purely technical, and cannot be sustained.

*Second.* "That the exceptions are not sufficiently specific, are too general in their terms, and do not point out the grounds of exception." Counsel argue that, as the counsel for the bondholders insist that the Virginia statute which gives priority to material, supply, and wage claims is unconstitutional, this objection should have been specifically stated in the exceptions, and that it is too late to raise the question in the argument of the cause. This objection to the form of the exceptions to a master's report was a question presented and passed upon by the supreme court of the United States in *Goddard* v. *Foster*, 1 Black, 506. In that case, Justice SWAYNE, speaking for the court, said:

"Before proceeding to consider the four remaining exceptions, we deem it proper to advert to an objection made to their form by counsel for the complainant. It is said that such an exception is in the nature of a special demurrer, and that these are not so full and specific that the court can consider them. Such is not the rule of this court. All that is necessary is that the exceptions should distinctly point out the findings and conclusions of the master which it seeks to reverse. Having done so, it brings up for examination all questions of fact and of·law arising upon the report of the master relative to that subject."

Applying the doctrine as laid down in *Goddard* v. *Foster* to the exceptions to be considered in.this case, the court is very clearly of the opinion that the exceptions are sufficiently full and specific. "They distinctly point out the findings and conclusions of the master which they wish to reverse."

*Third.* A third objection urged to the consideration of these exceptions is "that they were not taken at the proper time; that they should have been filed before the master before he had completed his report, so that, if there were errors in the report, the master could have had the opportunity to correct them." This was formerly the English chancery practice. The master made a draft of his report, notified counsel of his findings, gave them an opportunity to point out errors, and the master considered and corrected them. It was also the practice of the federal courts in chancery, prior to the adoption of the equity rules of practice. This was the practice when *Story* v. *Livingston*, 13 Pet. 359, was decided. This case has been strenuously urged upon the attention of the court as applicable to the exceptions under consideration. *Story* v. *Livingston* was decided in January, 1839. The rules of equity practice were promulgated by the supreme court on March 2, 1842, and since that time the practice has been different from that indicated in *Story* v. *Livingston*. So far from its now being required that exceptions shall be filed before the master during the time he is making up his report, one month is allowed after the report has been completed and returned to the clerk's office in which to file exceptions thereto. Rule 83 of rules of practice in equity provides:

"The master, as soon as his report is ready, shall return the same into the clerk's office, and the day of the return shall be entered by the clerk in the order book. The parties shall have one month from the time of filing the

report to file exceptions thereto; and, if no exceptions are within that period filed by either party, the report shall stand confirmed on the next rule-day after the month is expired."

This provision leaves no question as to the correctness of the practice pursued in this case. This view is sustained in the opinion of Judge GRESHAM in *Hatch* v. *Railroad Co.*, 15 Myer, Fed. Dec. 839, 9 Fed. Rep. 856–860.

The most important question presented for the determination of the court in this case is as to the priority of lien between certain supply and wage claims which existed against the Shenandoah Iron Company before the appointment of the receivers and the mortgage bondholders. The priority of these supply and labor claims, as reported by the master, rests upon the provisions of an act of the general assembly of Virginia, passed March 21, 1877, and amended by act of April 2, 1879. The first act is entitled "An act to secure the payment of wages or salaries to certain employes of railway, canal, steam-boat, and other corporations," and reads as follows:

"Be it enacted by the general assembly, that hereafter all conductors, brakemen, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics, or laborers, and all persons furnishing railroad iron, fuel, and all other supplies necessary for the operation of trains and engines employed in the service of any railroad, canal, or other transportation company, chartered under the laws of this state, or doing business within its limits, shall have a prior lien on the franchises, the gross earnings, and on all the real and personal property of said company which is used in operating the same, for and to the extent of the wages or salaries contracted to be paid them by said company."

The title and body of the act of April 2, 1879, read as follows:

"An act to amend and re-enact the first and second sections of an act approved March 21, 1877, entitled ' An act to secure the payment of wages or salaries to certain employes of railway, canal, steam-boat, and other transportation companies.'

"(1) Be it enacted by the general assembly, that hereafter all conductors, brakemen, engine-drivers, firemen, captains, stewards, pilots, clerks, depot or office agents, storekeepers, mechanics, or laborers, and all persons furnishing railroad iron, engines, cars, fuel, and all other supplies necessary for the operation of any railway, canal, or other transportation company, or of any mining or manufacturing company, chartered under or by the laws of this state, or doing business within its limits, shall have a prior lien on the franchises, the gross earnings, and on all the real and personal property of said company which is used in operating the same, to the extent of the moneys due them by said company for such wages or supplies."

—And no mortgage, deed of trust, sale, conveyance, or hypothecation hereafter executed of said property shall defeat or take precedence over said lien; but it is expressly provided that the liens of the employes and officials aforesaid shall be prior to all other liens whatsoever, and shall be the first discharged. Section 2 provides the mode of securing the liens provided for in the first section.

It is contended by the bondholders that both the act of March 21, 1877, and the act amendatory thereof, are unconstitutional and invalid

as to material and supply claims against a corporation of the character
of the Shenandoah Iron-Works; that they are also unconstitutional and
invalid as to the provision which gives to labor claims a lien prior to that
of the mortgage bonds. This invalidity arises from a failure of the orig-
inal and amended acts to comply with section 15, art. 5, of the con-
stitution of Virginia, which reads: "No law shall embrace more than
one object, and that shall be expressed in its title." The supreme court
of appeals of Virginia has recently decided these acts to be unconstitu-
tional as to materials and supplies furnished a railroad company. *Fidel-
ity Ins.*, etc., *Co.* v. *Shenandoah Val. R. Co.*, 9 S. E. Rep. 759. Judge
LEWIS, P., after referring to numerous decisions in other states as to the
requirement that the title shall embrace the subjects of the act, says:

"In the light of these principles, there can be no reasonable doubt, we think,
that so much of the act, and the act amendatory thereof, as is relied on in the
present case is repugnant to the constitution, and therefore void. The simple
and single purpose indicated by the titles to the two acts is to secure the pay-
ment of wages or salaries to certain employes: and we have only to regard
the plain and well-understood meaning of these terms to see that by no possi-
bility can they be made to embrace the claims in question. The price of a
locomotive is not wages or salary, and a person who builds and sells locomo-
tives, cars, etc., is, presumably, not an employe, but an employer. Bouvier
defines 'wages' to be 'a compensation given to a hired person for his or her
services;' and 'salary' he defines 'a reward or recompense for services per-
formed; * * * the price of hiring of domestic servants and workmen;'
though the term is usually applied, he says, to the reward paid to a public officer
for the performance of his official duties. We do not see how argument can
make plainer the invalidity of the act in the particular mentioned. The title
is misleading and deceptive. It gave not the remotest intimation of the pro-
visions of the act relied on here, which are foreign to the subject expressed in
the title; and to sustain the act in its entirety would be, in effect, by judicial
construction, to eliminate from the constitution one of its most important
provisions, or, at all events, to seriously impair its usefulness. This the
courts have no power to do. Our duty, in such a case, is to maintain the con-
stitution inviolate, and to declare void so much of the act as is inconsistent
therewith."

It is a well-settled principle that the decisions of the highest state
courts, in the construction of the state constitution and laws, are to be
adopted by the federal courts. This doctrine is established by numerous
decisions. Spear, Fed. Jud. 645, 646; *Shelby* v. *Guy*, 11 Wheat. 361;
*Jackson* v. *Chew*, 12 Wheat. 153; *Green* v. *Neal's Lessee*, 6 Pet. 291; *City
of Richmond* v. *Smith*, 15 Wall. 429. The decision of the court of appeals
of Virginia in the case cited controls in this cause. The reasons assigned
in that case for holding the acts unconstitutional as to supply claims
against a railway company apply with equal force to supplies furnished
a mining or manufacturing company; and the court decides that the
material and supply claims existing prior to the appointment of the re-
ceivers have no priority over the lien of the mortgage bonds.

The court has carefully examined the question as to the constitution-
ality of that provision of the amended act of April 2, 1879, which gives
a lien to the employes of mining and manufacturing companies superior
to that of the mortgage bonds. As we have seen, the original act made

no provision for the employes of such companies. The provisions of that act extend to no other employes than those of railroad, canal, and steam-boat companies. The title of the act uses the words "and other corporations," but these words must be construed as meaning "like corporations" with those already enumerated. The title to the amendatory act is "An act to amend and re-enact the first and second sections of an act approved March 21, 1877, entitled 'An act to secure the payment of the wages or salaries of certain employes of railway, canal, steam-boat, and other transportation companies.'" There is no reference in this title to the wages and salaries of employes of mining and manufacturing companies. The title refers exclusively to transportation companies. The provision in the body of the act giving a lien to the employes of mining and manufacturing companies is entirely foreign to the object declared in the title. It is in no manner germane to the legislation indicated by the title. A provision securing by lien the wages of farm laborers, or any other class of employes, would have been as appropriate as the provision inserted in regard to mining and manufacturing companies. The act is unconstitutional as to employes of mining and manufacturing companies, and the wage claims against the Shenandoah Iron Company existing prior to the appointment of receivers are not liens on the property of said company, and will have to be classed with the claims of general creditors. This conclusion disposes of the question as to the priority of labor claims over other claims due by the receivers. They have no such priority, and all proper claims against the receivers must be paid *pari passu.*

In this connection we will consider the exception filed by the bondholders to that part of the master's report which reports 14 receivers' certificates in favor of J. W. Rodgers. This exception must be sustained. The order of October 1, 1885, authorized the receivers to issue their certificates for a sum not to exceed $50,000 "to pay interest due on the bonds of the defendant company October 1, 1885, taxes overdue, and wages and freights due and to become due, before the business of the said defendant company to be prosecuted by the said receivers will realize sufficient to pay the same, and to pay for necessary materials in the prosecution of the said business." Mr. Rodgers' claim was not for wages, and the receivers were not authorized to issue to him certificates for it. The character of this claim was thoroughly discussed and carefully considered in the case of *Seventh Nat. Bank* v. *Shenandoah Iron Co.*, 35 Fed. Rep. 436, and the same evidence considered then bears upon it now. It is simply a store-account debt against the Shenandoah Iron Company, existing by reason of orders given by the Shenandoah Iron Company to its employes on the store of Rodgers & Milner in payment of their wages. "The issue of the certificates is, however, confined strictly to the purposes expressed in the order, and these purposes cannot be extended by implication." High, Rec. § 398*d.* Receivers' certificates, being merely evidences of indebtedness, can have no higher character than the debts of which they are the representatives. The debts for which these certificates were issued belonged to the class of general claims, and the

certificates must take the same position.   They cannot be allowed as claims against the receivers, and priority given them over the mortgage bonds.

The position taken by counsel, that the claims for materials, supplies, and labor furnished the defendant company before the appointment of receivers have, under the general principles of equity, a preference given them over the lien of the mortgage bonds, cannot be sustained.   This doctrine has never been applied to mining or manufacturing companies. It is, owing to the *quasi* public character of such companies, confined to railroad corporations.   This question was thoroughly and ably argued before this court in the case of *Seventh Nat. Bank* v. *Shenandoah Iron Co.*, 35 Fed. Rep. 438, 439.   The court has found no reason to change its decision rendered in that case, and deems it unnecessary to repeat the views therein expressed.   A decree will be entered in accordance with the opinion here expressed.