Mr. Justice Hagner
delivered the opinion of the Court:
*129 This is a bill in equity filed by the complainant to enforce a mechanics’ lien for work done on a dwelling situated near Rock Creek on K street in the city of -Washington, belonging to the defendant.
The bill alleges that on the 9th of October, 1885, the complainant entered into a contract with the defendant to remodel the building for the sum of $2,800, to be paid in installments ; that in accordance with the requirements of the contract he did remodel it and became entitled to the payment of the sum agreed on, but the complainant only paid him $1,200, leaving a balance of $1,600 due; that during th'e remodeling of the dwelling, certain extra work was done by agreement, for which $460 is a proper remuneration, but no part of which has been paid; that the building was completed by the 20th of February, 1886; and he claims the benefit of the statute to enforce his lien against the property.
The defendant, in his answer, replies at length to the charges made by the complainant. In general it is enough to say he admits having made the contract referred to and made an exhibit to the bill, and that the complainant claims to have performed the contract; but he denies that he did so; he avers that the work was not done by the complainant according to his obligation, and that what was actually done, was of such inferior character, that it was of very little use to him; that the extras were matters which the complainant was obliged to do under the contract, and that they were badly done like the rest of the work; that the result of the whole affair was the house was unlike that which the complainant had contracted to present to him, after being remodeled; and was so inferior in workmanship, and so defective, that he was obliged to expend in making it habitable a large sum of money, claimed in his exceptions to the auditor’s report to amount to $3,641.50; which if a cross-bill had been filed and the defendant’s claims were proved would represent what the complainant would have to pay, in addition to his outlay in repairing the house.
One of the items in this statement is a charge of $650 for *130 the improper construction of the front wall of the house. Another is $400 on account of plastering badly done; another is $917.52 for repairs that were rendered necessary by the bad work of complainant; $350 for changes in the plans; and there is also a claim of $350 loss of rent by delay.
The contract entered into between the parties originally is a very remarkable document. If they had taken special pains to devise a scheme by which they would surely get themselves into trouble, they could scarcely have succeeded better than they did in this agreement. It was prepared on a blank printed and prepared to be used in a town in New York; and is stated therein to be the copyright property of the inventor; and is intended for record in the town clerk’s office in that State. Evidently the defendant and complainant began to expend their money for attorneys too late; they should have gotten some capable person to prepare their contract before the work began.
In the printed part of the agreement Haller contracts “well and sufficiently to erect, finish and deliver the house in a true, perfect, and thoroughly workmanlike manner,” although the house had been erected for many years. Then, in writing, he agrees: “To remodel an old house, said house to be turned into flats, located on K street, between 26th and 27th streets, northwest. Work required in the erection and completion of said building or flats for the party of the second part, on ground situated as aforesaid, in the city of Washington, District of Columbia, agreeably to plans, drawings and specifications prepared for said works by Nicholas T. Haller, architect, to the satisfaction -and under the direction and personal supervision of Nicholas T. Haller, architect.” The latter part of this paragraph was afterwards changed, by interlineation so as to read “to the satisfaction and under the direction and personal supervision of Mrs. H. W. Clark, architect” — she being the wife of the defendant. Then follows a covenant by the party of the second part that he will pay for the work: “ Provided that in each case of said payments, a certificate shall be obtained from and *131 signed by Nicholas T. Haller, architect, to the effect that the work is done in strict accordance with the drawings and specifications and that he considers the payment properly due.” The chances were, decidedly, that Haller as architect would probably have no great difficulty in certifying that his own work as contractor had been properly performed. But a valuable safeguard was introduced in the latter part of the contract, in these words: “ Should any
dispute arise respecting the true construction and meaning of the contract and specifications, as to what is extra work outside of the contract, the .same shall be decided by Nicholas T. Haller, architect, and his decision shall be final”; which also was changed, so as to read: “The same shall be decided by Mrs. H. TV. Clark, architect, and his decision shall be final.”
The result that might have been expected followed. The parties differed, of course; and that was the occasion of the filing of this bill. The case went to proof, and on the 29th of June, 1889, the court below referred it to Mr. Johnson, as special auditor, to examine the testimony taken in the cause, and digest the same for the court, and report what deduction, if any, should be made from the claim of complainant for omitted work, and for defective work, as in violation of the contract with the defendant; also for work done by defendant in making good defective work of complainant; also to allow for all money paid by defendant for and on account of mechanics’ and material men’s liens filed in the clerk’s office against said property. All questions respecting the competency of the testimony, or any part thereof, the legal rights of the parties upon the whole proof, were to be passed upon by the auditor, subject to the review of the court. The auditor was also required to set forth the items claimed and allowed or disallowed by him, so ás to present his findings to the court in detail.
On the 24th of July, 1889, that order was modified by vacating so much as required the auditor to digest the testimony ; and directing him to ascertain, pass upon, and re *132 port the claims set forth in the complainant’s bill and the defendant’s answer, and the claims of the defendant for recoupment, as set forth in the answer and testimony.
The testimony taken in the case fills four volumes, containing upwards of fifteen hundred pages of type-writing, which the solicitors say they analyzed before the auditor for twenty-two days. The auditor made his report, which varies from the claims of the two parties in several respects.
There were fifteen items of extra work claimed by the complainant. The auditor rejected two of them; one for putting 'in a servant’s water closet, and the other for putting in a window. He reduced the item for putting in wooden girders, from $100 to $50; allowed the defendant $70 on four items which are embraced in the defendant’s bill of particulars; and gave him credit for $1,200 paid, and for $637.84 which he had paid to material men, who had filed liens against the property; and as a result of his examination he reported the balance due to the complainant to be $1,608-96.
Thereupon -eighty-four exceptions to the report were filed by the defendant, and on these the case was heard by the equity court. The industry of counsel for the defendant in preparing this volume of complaints is certainly very remarkable; but their examination has imposed a very serious burden upon the court in a case of very moderate pecuniary importance. We have endeavored -as far as we possibly could, to make that examination thorough.
The only question of law raised by the exceptions, is whether Mrs. Clark, the wife of the defendant, was a competent witness to testify in behalf of the defendant. Upon objection by the complainant the auditor declined to consider her testimony and that ruling was affirmed by the Justice below.
Plainly she would not have been a competent witness for her husband at common law; and we think the Evidence Act has made no change in that regard. As was said in Lucas vs. Brooks, 18 Wallace, 436, the objection to the tes *133 timony of the wife when offered in behalf of her husband, rests solely upon grounds of public policy and to that the statute has no application.
It is insisted, however, that by the terms of this contract Mrs. Clark was constituted the. agent of the parties, which brings her within a recognized exception to the rule; and in support of this doctrine, several cases were cited; but they fail to sustain the contention.
When the parties selected Mrs. Clark as their agent, as is insisted, they must be supposed to have done so with reference to her existing incapacity to testify, which might operate unfavorably to either party; but this hardship does not remove the objection to the reception of her testimony upon the grounds of public policy.
In the case of Stickney vs. Stickney, 131 U. S., 227, which has been cited as showing in some way a modification of the strictness of construction on this point this question of agency was not involved. There, a widow was allowed to testify with respect to her separate estate, and to give a history of her investments, although some of her money had passed through her husband’s hands. The ruling of the court below on this point was correct.
We are met by a difficulty as to the form of these exceptions. In Alexander’s Chan. Pr., page 127, it is said: “Each exception should point to some particular fault in the report. General exceptions are not to be allowed.”
In Harding vs. Handy, 11th Wheaton, 126, Chief Justice Marshall says: “The exceptions are to be regarded so far only as they are supported by the special statements of the master or by evidence, which ought to be brought before the court by a reference to the particular testimony on which the exception .relies. Were it otherwise, were the court to look into the immense mass of testimony laid before the commissioner, the reference to him would be of little avail.”
In Story vs. Livingston, 13 Peters, 365, the court, in considering exceptions to a master’s report, said: “All these exceptions, except the third, are irregularly taken, and *134 might be disposed of by us without any examination of them in connection with the master’s report. They are too general; indicate nothing but dissatisfaction with the entire report, and furnish no specific grounds, as they should have done, wherein the defendant has suffered any wrong, or as to which of his rights have been disregarded. * * * Exceptions to reports of masters in chancery are in the nature of a special demurrer, and the party objecting must point out the error, otherwise the part not excepted to will be .taken as admitted.”
In Greene vs. Bishop, I Clifford, 192, the court said: “ General exceptions are not sufficient. A party excepting to the report must designate particularly the erroneous action excepted to, and refer the court distinctly and clearly to the ground of his exception.”
Exceptions should not leave a court in doubt whether the ground of the complaint is an absence of evidence, or a preponderance against the auditor’s conclusion, or whether the testimony relied on was inadmissible in law. To enter upon a conjectural search to ascertain the ground of complaint would compel us to explore the entire cause, in examining each exception in the endeavor to discover defects in the proofs, which the exceptant had not taken the trouble to call to our attention.
A reading of a few of these exceptions will show how completely they violate this rule.
In No. 10½, he excepts “to said report as allows plaintiff $2,800, because proof shows plaintiff did not perform his contract”; in No. 11 he excepts “to said report as allows plaintiff $1,600 as balance of contract price of $2,800, because plaintiff did not perform his contract.” In No. 11½ he excepts “to the said report as finds the wall was erected as per contract, because same is not supported by the proof.” In No. 12, he excepts “to said report as finds said wall was substantially erected as per contract, because same is not supported by proofs.”
These are samples of many of the eighty-four exceptions, *135 which are substantially like those which, in Story vs. Livingston, 13 Peters, 365, the court held were insufficient. The application of this principle excludes from our consideration a large proportion of the exceptions.
The rule by which we are governed in considering such exceptions as are proper in form, has been repeatedly laid down by the Supreme Court of the United States, and is repeated in Crawford vs. Neal, 144 U. S., page 585, where the court says: “ The findings and conclusions of a master upon conflicting testimony are to be taken as presumptively correct, and unless some obvious error in the application of the law has intervened, or some serious or important mistake has been made in the consideration of the evidence, the decree should stand.” In the recent case of Furrer vs. Ferris, 145 U. S., page 134, the court restates this position, and cites with approval the case of Crawford vs. Neale, with a number of others, to the same effect.
The testimony has been examined with reference to such exceptions as are properly taken. To attempt a recital of it at this time would be an improper consumption of time, not justified by our engagements, by the rights of other suitors, or the importance of this case. We can, now refer to only a few of the exceptions of the class we refer to.
The most important are those which go to the rejection of the entire claim under the contract, for the $2,800, on the ground that none of it was earned because the work was not performed in accordance with the contract and specifications, and most of what was done was so badly executed that no obligation rested upon the defendant to pay for any part of it A serious controversy exists as to what were the contracts and specifications which were actually adopted by the parties, as several forms of contract were before the parties at different times, and four sets of drawings and specifications were produced before the auditor.
The auditor examines this contention, and states as his conclusion from the testimony that those marked W. H. S. No. 1 and N. B. C. No. 3, are more in consonance with the house as remodeled than any of the others.
*136 This is,made the subject of defendant’s exceptions Nos. 3 to 10, inclusive, and of eleven pages in his first printed brief, and of fifteen pages in the printed brief of the complainant. Each argument is largely composed of quotations and references to the volumes 'of testimony. An examination of these arguments and references has failed to disclose “such serious or important mistake” by the auditor in his consideration of the evidence upon this point, as is required by the Supreme Court, in Crawford vs. Neale.
Many of the defendant’s objections to particular portions of the work are disallowed by the auditor, upon the ground that those parts were accepted by the defendant after they were completed. If this were the fact, such acceptance implies that the work was to be paid for; and it would be too late to renew objections that had thus been waived, when suit is brought to recover, Dermott vs. Jones, 2 Wallace, page 9, and this, although the work may not have been done according to the stipulations of the contract.
“Where deviations from the plan furnished by the contract are made known to the party entitled to insist upon a compliance with it, his assent, as in like cases, may be presumed, if he, having opportunity, and having his attention expressly directed to the subject, do not insist upon his rights with such a degree of consistency and firmness as shall amount to a notice of his dissent. A mere complaining of the aberration, while it may have been rectified, followed by conduct or language that indicate acquiescence, will not enable him, when the work has proceeded too far for remedy, to take advantage of the faulty particular.” Barley vs. Woods, 17 New Hampshire, 371.
Such seems .to have been the conduct of the defendant with respect to the front wall and other portions of the building now complained of. The defendant insists that as the contract required the entire front wall to be taken out of the house, he is entitled to recoup $650 from complainant’s claim on this account. It is shown the complainant removed the entire wall, except the extreme ends, *137 which were left as piers to prevent the walls of adjacent houses from falling in. The evidence is that this arrangement was a safe one; that Clark saw exactly what was being done, and when he complained it was not satisfactory Haller said he would make it so, and that he did make alterations in the work and had it sanded and painted; and that notwithstanding the previous complaints, payments were afterwards made by Clark upon the work.
The statement as to bad workmanship in using the so-called old English brick with the smaller new brick, is not sustained by the evidence, certainly not to an extent beyond the $75 allowed to the defendant by the; court below on this account. The photograph of the front wall, as now existing, does not disclose the irregularities and imperfections said to disfigure its appearance. Whether there ever were any English brick in the building may well be questioned. So much importance was attached to this pretension that we are justified in recognizing as matter of history, that in the early colonial days, while the exports from this part of the country consisted of tobacco and other bulky commodities, the goods needed for the return cargoes were made up of lighter articles, such as manufactured goods, and delicacies of food and raiment. There was, therefore, a necessity to take ballast on board in England; and as long as the people here would buy brick thus imported, they constituted a profitable form of ballast. But the shippers soon found, at least one hundred years before this house was built, that the people would not buy inferior English bride when they could procure a far better domestic article at a smaller price. The neighborhood of Washington soon became famous for the excellence of its brick, and the millions of bricks used in the construction of the Capitol and other public buildings, before the K street house was built, were burnt on the spot. The strong probability, is that no house in this city was ever built of English brick — the popular superstition to the contrary. As matter of fact the English brick were smaller instead of larger than the American brick; the English statute in force *138 about the time of the Revolution, requiring them to be only eight inches in length, instead of nine, as in this country.
It is needless to go further through the mass of exceptions. It is enough to say we are satisfied justice has been done to the parties by the decree of the court below, which modified the auditor’s report in several respects. The auditor had reduced the bill for extras to $385 from $460, and the trial Justice cut it down to $330. The auditor also allowed $170 on account of claims of the defendant, and this was increased to $278. He also changed the-allowance of interest, so that instead of the sum of $1,600, as stated by the auditor, the decree of the court below was $1,014.10. We think that ruling does full and substantial justice to the parties.
The court’s apportionment of the fee of the auditor and its amount would seem to be within the discretion of the justice below, under the seventy-seventh Equity Rule; and although the sum seems liberal, considering the moderate amount involved in the case, we cannot see that the discretion was abused, in view of the great mass of evidence, and the length of time consumed in the examination of the case by the auditor; and hence there is no ground- upon which we can overrule the order of the court below upon this point.
This exception, and all others inconsistent with the decree of the court below are overruled, and the

Decree is affirmed in all respects.